1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Georgene Vesecky, an individual,      )   No. CV-11-1180-PHX-LOA
                                          )
10                  Plaintiff,            )   **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Wilshire Aspirations, LLC,            )
13                                        )
                    Defendant.            )
14  _____  )
                                          )
15

16          After reaching a  settlement on the removal of accessibility barriers for the disabled

17  at Defendant's shopping center, the parties were unable to agree on the amount money

    Defendant should pay for Plaintiff's reasonable attorney's fees and costs as the prevailing
18
    party. (Doc. 26)  On December 30, 2011, Plaintiff Georgene Vesecky filed an Application
19
    for Attorney's Fees, Litigation Expenses and Costs. (Doc. 30) Defendant Wilshire
20
    Aspirations, LLC opposes the amount of fees and costs Plaintiff requests in her application,
21
    describing them as excessive, unreasonable, and "shocking." (Doc. 33 at 5)
22
            The parties have consented to magistrate-judge jurisdiction pursuant to 28 U.S.C. §
23
    636(c). (Docs. 5, 9)  After considering the briefing and applicable law, the Court awards
24
    Plaintiff reasonable attorney's fees and litigation expenses in the amount of $12,786.81, and
25
    directs the Clerk to enter judgment in favor of Plaintiff in this amount and terminate this
26
    action.
27

28

## I. Background

This is a disability discrimination case in which the parties dispute the reasonableness of Plaintiff's attorney's and expert's fees incurred before and after the parties settled Plaintiff's ADA claims by Defendant's agreement to remediate the barriers to accessibility for wheelchair users and other disabled persons. "Defendant acknowledges that the ADA allows the prevailing party to recover its **reasonable** attorneys fees and costs." (Doc. 33 at 1) (emphasis in original). Claiming Plaintiff's requested attorney's fees "shock[] ones (sic) conscience," and "Mr. Don's office is preparing pleadings from templates and is not completing any highly technical work; work that is arguably being completed by his paralegal at $125.00 per hour[,]" Defendant argues Plaintiff should be awarded "no more tha[n] $7,500.00 in light of the significant time discrepancies and redundancy known to exist." (*Id.* at 1, 6)

### A. The Allegations

On June 15, 2011, Plaintiff, a disability advocate[1] who uses a wheelchair for mobility, brought this civil rights action, alleging Defendant's shopping center, known as Wilshire Plaza, located in Scottsdale, Arizona, violated Title III of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12181 *et seq.* and the Arizonans with Disabilities Act ("AzDA"[2]). (Docs. 1; 14 at 2-3)  When Plaintiff visited the shopping center as a potential customer, she

---

[1] According to Defendant, Plaintiff's counsel, David J. Don, and his expert, Paul S. Farber, "[h]ave worked together on some 80 cases and 20 regarding this same Plaintiff." (Doc. 33 at 5-6)  Taking judicial notice of case filings in the District of Arizona, Phoenix Division, Mr. Don has filed 115 ADA cases from 2006 through the present, in 20 of these cases he represented the Plaintiff in this case, Georgene Vesecky. *Webb v. Onizuka*, 2009 WL 943274, * 4 n. 1 (D.Haw. April 8, 2009) (The district court may take judicial notice of other complaints under Federal Rule of Evidence 201) (citations omitted).

[2] "The AzDA prohibits a place of public accommodation or a commercial facility from failing to include features that create accessibility in structures occupied after January 26, 1993, or facilities built after that date that have made an alteration to an area in which access barriers could be removed." *Vesecky v. Garick, Inc.*, 2008 WL 4446714, * 8 (D.Ariz. September 30, 2008) (citing A.R.S. § 41-1492.04).

encountered discriminatory "architectural barriers to access" that prevented her and others with disabilities from the "[f]ull and equal enjoyment of the good[s], services, facilities, privileges, advantages, or accommodations at Defendant's property[]" and the various businesses open to the public. (Doc. 1, ¶¶ 19, 27) She alleged that because of the architectural barriers, she was "deterred from visiting or patronizing" the shopping center which "[m]eans the difference between enjoying a sense of autonomy or . . . feeling excluded and marginalized." (*Id*., ¶¶ 11, 15 at 3-4)  "For Ms. Vesecky, the choice of a business to construct or fail to remove architectural barriers to accessibility for people with disabilities is hurtful and demeaning[]" and represents "[h]urtful and demeaning symbols of discrimination [which] increase the level of difficulty for Ms. Vesecky's physical access." (*Id*., ¶¶ 17 at 4, 21 at 5)

The Complaint sought, *inter alia*, injunctive relief; an "order directing the removal of existing barriers to access and to make the shopping center accessible to and usable by individuals with disabilities as required by the ADA"; and "[a]n award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. 12205." (*Id*. at 8)

Defendant admitted ownership of Wilshire Plaza, which, according to Plaintiff's expert, was constructed "for first occupancy before January 26, 1993, the effective date of the ADA."[3] Defendant claimed it did not knowingly violate the ADA or the AzDA and

---

[3] Doc. 33-2 at 4.

"There are three categories of accessibility requirements under Title III of the ADA—the 'new construction' provisions, which apply to public accommodations constructed after January 26, 1993; the 'alteration' provisions, which apply to post-January 26, 1992 alterations to buildings that existed as of that date; and the 'readily achievable' provisions, which apply to unaltered portions of buildings constructed before January 26, 1993." *Moeller v. Taco Bell Corp.*, 2011 WL 4634250, * 13 (N.D.Cal. October 5, 2011); *see also Hubbard v. Rite Aid Corp*., 433 F.Supp.2d 1150, 1159 (S.D.Cal. 2006).

Plaintiff alleged Defendant had "[r]estriped and/or resurfaced or otherwise altered the parking spaces, access aisles and parking lots in the shopping center since 1993[,]" which, according to Plaintiff, triggered the ADA's mandatory compliance for disabled access to the shopping center's buildings and parking lot. (Doc. 1, 23 at 5) Assuming these allegations to be true, Defendant is required to make such alterations "readily accessible to and usable by

1   denied the shopping center's property manager received notice from Plaintiff or any other

2   person or entity that the shopping center violated the ADA or the AzDA.[4] (Doc. 14 at 3; doc.

3   33-1, Exhibit ("Exh.") A ¶¶ 3-4 at 2)

4            On August 31, 2011, after the Rule 16 scheduling conference, the case management

5   order mandated the completion of discovery by April 30, 2012, and the filing of dispositive

6   motions by May 31, 2012. (Doc. 18, ¶¶ 5-6)  After the parties exchanged limited written

7   discovery, a settlement conference was scheduled on January 31, 2012. (Docs. 20-25)  On

8   December 7, 2011, the parties filed a Notice of Partial Settlement, advising the Court the

9   parties had reached a settlement on "all issues of barrier identification and a timeline for

10  remediation[,]" but were unable to agree on the amount of money Defendant should pay for

11  Plaintiff's reasonable attorney's fees and costs. (Doc. 26)  The Court vacated the settlement

12

13  ─────────────

14  individuals with disabilities." *Hamblen v. Diamante Crossroads Plaza, LLC*, 2009 WL
    825809, * 2 (D.Ariz. March 30, 2009) (quoting 42 U.S.C. § 12183(a)). "A facility is 'readily

15  accessible' only if it complies with the ADAAG." *Id.* (quoting 28 C.F.R. § 36.406(a)
    (2007)); *see also Moeller v. Taco Bell Corp.*, 2011 WL 4634250 (N.D.Cal. October 5, 2011).

16

17      [4] Plaintiff contends that on May 20, 2009, she sent an email to Defendant's property
    manager, Morgan Commercial Property Management. (Doc. 36 at 3)  She provided her name

18  and email address on the "contact us" feature on the company's web site and informed the
    property manager she uses a wheelchair and "[g]etting into and around the center is very

19  hard and dangerous in a wheelchair. The routes and ramps are steep and otherwise hard to
    use. It does not meet ADA requirements. . . ." (*Id.*; doc. 33-1, Exh. A at 2)

20      "[T]the ADA requires neither that plaintiffs give defendants pre-suit notice that they

21  intend to sue, nor that plaintiffs give defendants an opportunity to cure the alleged violation
    or violations before filing suit as a pre-requisite to recovering attorneys' fees." *Skaff v.*

22  *Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 846 (9th Cir. 2007); *Hohlbein v. Utah*
    *Land Resources LLC*, 432 Fed.Appx. 655, 657 (9th Cir. 2011). Nevertheless, "a district court

23  may, in its protraction analysis, consider whether a plaintiff provided prelitigation notice .
    . . to determine whether failing to provide prelitigation notice resulted in unnecessary fees

24  during the course of the litigation - that is, fees that would have been lower had there been

25  notice before filing." *Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008) (citing

26  *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1360 (11th Cir. 2006) (*per*
    *curiam*)).

27      Because Defendant's briefing did not develop whether pre-litigation notice should

28  reduce Plaintiff's requested fees, the Court will not address this issue because it is waived.

conference and entered a briefing order solely on the issue of Plaintiff's fees and costs.

### B. Relevant Negotiations

Plaintiff's counsel represents, and there is no evidence to the contrary, that he initiated settlement discussions by an October 27, 2011 email with an attached letter to defense counsel, identifying the specific barrier removal work needed and requesting that Defendant pay Plaintiff's fees and costs in the amount of $13,203.74 to settle the case. (Docs. 36 at 4[5]) Plaintiff imposed a responsive deadline of two weeks. (*Id.*) According to Mr. Don, because defense counsel did not provide "a substantive response" by Plaintiff's counsel's self-imposed deadline, he sent another email to defense counsel on November 29, 2011, notifying defense counsel that

> [w]e intertpret your lack of response to our settlement overture as a rejection. We are now prepared to begin work on a summary judgment motion . . . [but] will refrain from doing this . . . for another two days . . . to give you one last opportunity to accept our settlement offer. After that, the offer is off the table."

(Doc. 36-2, Exh. B at 2) That same day, only five hours later, but before Plaintiff's second settlement-acceptance deadline expired, defense counsel responded, again by email, to Plaintiff's counsel's November 29, 2011 email, indicating Defendant intended to "remove[] any architectural barrier that exists at the shopping center [and would] pay $2000.00 for your client's attorneys (sic) fees." (Doc. 33-3, Exh. C at 6)  Defense counsel concluded this email by explaining, "[t]he architectural barrier work is going to be completed regardless of [Plaintiff's] acceptance of the foregoing offer and will commence shortly." (*Id.*) In a responsive email the next day, Plaintiff's counsel's expressly "rejected" Defendant's settlement counteroffer of a $2,000.00 payment for Plaintiff's fees and costs, and, as a "final offer," indicated a willingness to settle the disputed issue of fees and costs with Defendant's payment of $11,500.00 plus the now-undisputed barrier removal terms; otherwise Plaintiff's "[o]ffer is withdrawn at 5:00 p.m. today, after which, we have no choice but to begin work

---

[5] Neither party has included a copy of Plaintiff's October 27, 2011 email or letter in the record.

1  on our motion for summary judgment, resulting in a much higher expense for eventual

2  settlement." (Doc. 33-3, Exh. C at 8) On December 30, 2011, Plaintiff filed her fee's and

3  cost's application. (Doc. 30)

4        **C. The Remediation Agreement**

5        The parties' written settlement agreement, signed on or about December 5, 2011,

6  confirms that Defendant agreed to complete the barrier modifications by December 31, 2011.

7  (Doc. 36-3, Exh. C at 7)  At the present time, the corrective work has been completed.[6]  The

8  settlement agreement required compliance "with the applicable Americans with Disabilities

9  Act Accessibility Guidelines, and address all the architectural barriers identified in the expert

10  report of Paul Farber, CAI/PE, dated October 19, 2011[]" as follows:

> Install a new ramp, signage and striping at each of the two stand alone pads that house Sleep America and the Army Recruiting Center. Install two new ramps, signage and striping at the main shopping center. Remove existing signage and striping denoting handicap parking at the two pads and main shopping center. Remove the walkway/entrance at the North side of the shopping center, thereby alleviating the need for the handrails.

(*Id.*)  No claim or suggestion is made that Defendant has not satisfactorily completed the corrective work as agreed by the parties. On February 2, 2012, however, Plaintiff reported that, according to the settlement agreement, "Defendant is required to notify the Plaintiff upon completion of its remediation of the property to schedule a final site inspection to verify the work done . . . [and] has failed to do so." (Doc. 36 at 7) (citing Section II-D of the settlement agreement[7]).

The Wilshire Plaza shopping center, located on the east side of Scottsdale Road, was built well before the passage of the ADA on July 26, 1990. The shopping center consists of

---

[6] The Court conducted a thorough viewing of the shopping center on February 25, 2012.

[7] Section II-D of the settlement agreement provides: "The parties acknowledge that a final inspection shall occur upon completion of the [agreed-upon remediation]. Defendant shall contact Plaintiff's counsel upon completion of the [agreed-upon remediation] to schedule a mutually convenient time for a final site inspection." (Doc. 36-3, Exh. C at 3)

three stand-alone buildings, two running east and west[8] and one much larger building running north and south parallel to Scottsdale Road. Though it is an older shopping center built before the passage of the ADA, several disabled access ramps and parking spaces existed before this lawsuit was filed which were clearly intended to allow disabled access to the three buildings. The asphalt ramps, striped access aisles, and disabled parking spaces did not, however, meet the ADA Guidelines or, as Defendant describes them, the ADA's "stringent technical standards."  While the construction costs to comply with the settlement agreement and/or the ADA Guidelines have not been provided to the Court, Plaintiff's expert estimated the corrective work to eliminate the barriers to achieve ADA compliance would cost $9,622.50. (Doc. 33-2, Exh. B at 6-13) The report of Plaintiff's expert described six so-called "architectural barriers" at the shopping center,[9] but Defendant has apparently achieved ADA compliance by altering five areas. (Docs. 33 at 1-2; doc. 33-2 at 6-13)

　　　1. The first barrier was an 8.2% sloped concrete 72-inch-long ramp at the northern

---

[8] The northern building or pad facing south contains the business called Checks Cashed; the southern one facing north houses the Sleep America bed store. The much larger building runs parallel to Scottsdale Road and contains numerous west-facing businesses, including the AZ Wine Company, the Caribbean Fusion restaurant, the On the Rocks tavern, and the La Taverna Mexican Grill.

[9] The Complaint identified only "three architectural barriers to access encountered by Plaintiff at the shopping center[:]"

　　　a. In a number of locations (for example, in front of AZ Wine Company), there are curb ramps with running slopes in excess of the 8.33% maximum, in violation of ADA Accessibility Guideline[s] ("ADAAG") 4.8.2.

　　　b. In a number of locations (for example, in front of On the Rocks), the "accessible" parking spaces have slopes in excess of the 2.0% maximum, in violation of ADAAG 4.6.3.

　　　c. In a number of locations (for example, in front of Checks Cashed), the "accessible" parking spaces are missing compliant signage, in violation of ADAAG 4.6.4.

(Doc. 1, ¶ 19, at 4)

1  entrance to the largest building off East Wilshire Drive, a public street and sidewalk.

2  Plaintiff's expert proposed two 12-foot handrails be installed. (Doc. 33-2, Exh. B at 6, to Mr.

3  Farber's report, attached to Defendant's Response). To comply with the settlement

4  agreement, the concrete ramp was removed, grass was installed, and this particular pedestrian

5  entrance from the sidewalk was eliminated as "unnecessary" due to other access points.

6  (Docs. 33-23, -24, -25, Exh. H, pictures depicting the remedial work after completion).

7      2. The second barrier was in front at the Checks Cashed business, closer to Scottsdale

8  Road, which was a ramp which sloped 10.3% in lieu of the acceptable 8.33% maximum

9  allowed by the Guidelines, an overly narrow access aisle, and the disabled parking sign was

10  missing from its pole. (Doc. 33-2, Exh. B at 7, to Mr. Farber's report, attached to Defendant's

11  Response). Defendant installed a new ADA-compliant concrete ramp, a wider asphalt access

12  aisle, replaced the missing disabled parking sign, widened and leveled the asphalt disabled

13  parking space, and added new striping and painting. (Docs. 33-11, -12, -13, Exh. H, pictures

14  depicting the remedial work after completion).

15      3. The third barrier was a ramp directly in front of the AZ Wine Store between two

16  Roman columns. It was apparently intended as disabled access "[r]amp that was sloped

17  19.3% in lieu of the 8.33% maximum and the [disabled] parking space itself was sloped in

18  excess of the maximum 2% in all directions." (Doc. 33 at 2) Though the asphalt ramp directly

19  in front of the AZ Wine Store has not been removed, Defendant moved the designated

20  disabled access to just south of this ramp, added two new disabled parking spaces, installed

21  a new ADA-compliant concrete ramp, a wide access aisle between two new disabled parking

22  spaces, converted the deficient disabled parking space and access aisle in front of the former

23  Caribbean Fusion restaurant into a non-disabled parking space. (Docs. 33-14, -15, -16, Exh.

24  H, pictures depicting the remedial work after completion).

25      4. The fourth barrier, in front of the On the Rocks tavern, was a disabled ramp that

26  sloped 17.9% in lieu of the 8.33% maximum for curb ramps and the maximum 2% for access

27  aisles. (Doc. 33-2 at 12)  Defendant did not remove this asphalt ramp, but instead, created

28  disabled access just south of this asphalt ramp between the On the Rocks tavern and the La

1    Taverna Mexican Grill, added a new disabled parking space, installed a new ADA-compliant

2    concrete ramp, wide access aisle, disabled parking sign, and new striping.  (Docs. 33-16, -17,

3    -18, Exh. H, pictures depicting the remedial work after completion).

4         5. The last barrier was in front of the Sleep America store on the south side of the

5    shopping center's parking lot near Scottsdale Road. (Doc. 33-2 at 13)  Here, a disabled

6    parking space and parking sign existed before this lawsuit was filed, but the asphalt ramp was

7    sloped 11.8% which exceeded the acceptable 8.33% maximum allowed by the ADA and the

8    2.0% maximum for access aisles. (*Id.*) Defendant removed a portion of the landscaping,

9    installed a new ADA-compliant concrete ramp and a wider asphalt access aisle, widened and

10   leveled the asphalt disabled parking space, and added new striping. (Docs. 33-19, -20, -21,

11   -22, Exh. H, pictures depicting the remedial work after completion).

12        **D. Plaintiff's Requested Fees and Costs**

13        Pursuant to 42 U.S.C. § 12205 and Local Rule ("LRCiv 54.2"), Plaintiff's attorney

14   seeks an award of  attorney's fees and costs in the total amount of $19,792.47 incurred from

15   June 7, 2011, the first telephone conversation with Plaintiff related to this case, to February

16   2, 2012, the date the Reply was filed. (Docs. 36 at 11; 30-2 at 2)  Initially, Mr. Don requested

17   fees and costs of $17,167.47, doc. 30 at 1, but, in the Reply, he argues that because

18   "Defendant's convoluted Response required approximately 10 hours . . . [Plaintiff] requests

19   an additional award of seven hours (at $375 per hour = $2,625), making the total amount

20   requested now $19,792.47." (Doc. 36 at 11) (footnote omitted).  Plaintiff argues that because

21   the parties reached a "legally enforceable" settlement agreement to eliminate the accessibility

22   barriers on Defendant's property, Plaintiff is the prevailing party and entitled to an award of

23   her attorney's fees and costs. (Doc. 30 at 4)

24        Attached to his Application for Attorney's Fees is Mr. Don's declaration that he

25   devoted 32.48 hours and his paralegal 2.39 hours in prosecuting this action on behalf of

26   Plaintiff. (Doc. 30-1, Exh. A, ¶ 3 at 2)  At his requested hourly rate of $375.00 ($12,180.00)

27   and his paralegal's hourly rate of $125.00 ($298.75), the total fees through December 30,

28

1    2011 were $12,478.75.[10] (*Id.*) Additionally, Plaintiff's attorney has itemized the costs he

2    advanced on behalf of Plaintiff[11] in the amount to $4,682.06, as follows: filing fee ($350.00),

3    service of process fee ($124.50), postage ($7.56), and the expert witness fees of Paul Farber,

4    CAI/PE, Farber Consulting, LLC, of Scottsdale, Arizona ($4,200.00). (Doc. 30-2, Exh. B at

5    6) Plaintiff's total requested fees and costs through December 30, 2011 was $17,160.81

6    ($12,478.75 + $4,682.06 = $17,160.81).

7        Plaintiff's written fee agreement, called Representation Agreement, with Mr. Don

8    provides that Plaintiff agrees to pay attorney's fees of "[t]he greater of: (a) of the amount of

9    any settlement or jury verdict . . . or (b) the attorney's actual earned fee, as determined by

10    the number of hours worked by Attorneys multiplied by the hourly rate . . . [of] $400.00 per

11    hour[]" subject to three conditions. (Doc. 30-5, Exh. E at 2) One such condition is that if the

12    attorney's fees "[e]xceed[] court-awarded fees, the client shall be liable for any deficiency."

13    (*Id.*) In bold print, however, the fee agreement states, "**IN THE EVENT OF NO**

14    **RECOVERY, CLIENT(S) SHALL OWE NO LEGAL OR LEGAL STAFF FEES**."

15    (*Id.*) The fee agreement also provides that all costs advanced, including investigator's costs

16    "[b]illed at a reasonable and customary rate . . . shall be reimbursed . . . at the conclusion of

17    representation regardless of recovery. . . ." (*Id.*)

18        Filed with the fees' application, the affidavit of Plaintiff's counsel avers that Mr. Don

19    "ha[s] been practicing in the area of civil rights litigation on behalf of plaintiffs for 16

20    years[,] lectured and taught numerous times to various trial lawyer groups, the Arizona State

21    Bar Annual Convention Disability Law Section, and for private CLE providers, in the areas

22    of civil rights litigation, including the Americans with Disabilities Act, trial presentation,

23    evidence and legal ethics." (Doc. 30-1, Exh. A, ¶ 7 at 2-3) He was the 2006-07 President of

24

25

26        [10] Plaintiff's calculation of 34.87 hours of attorney and paralegal time at the identified rates resulted in a slightly erroneous total of $12,485.41. (Doc. 30-2, Exh. B at 6) The Court

27    will rely on its mathematical calculation of Plaintiff's fees.

28

the Arizona Trial Lawyers Association, Phoenix Division, belongs to numerous professional organizations, and has "successfully litigated about 100 Title II and III cases involving architectural barrier removal." (*Id*.) Mr. Don indicates he does not know any other private practice attorney in the Phoenix metropolitan area regularly undertaking representation of plaintiffs in Title III ADA cases. (*Id*., ¶ 8 at 3)

Plaintiff's counsel cites *Arizona, Dept. of Law, Civil Rights Div. v. ASARCO, L.L.C.*, as support that in 2011 "the Phoenix-area market rate for experienced plaintiff's counsel in a civil rights case working on a contingency basis was $350 to $480." (Doc. 36 at 2) (citing 2011 WL 6951842 * 6 (D. Ariz. September 29, 2011) (According to Phoenix attorney Tod Schleier, "an 'av' rated employment and discrimination law litigator," "the typical billing rates for such experienced practitioners in the Phoenix metropolitan area range from $350.00 to $480.00 per hour and $175.00 to $275.00 for less experienced attorneys."). Here, Plaintiff's counsel's requests payment at a rate of $375.00 per hour which, he argues, "falls squarely within the market range, a position supported by affidavits from two experienced counsel, Joel B. Robbins and Dan Ziskin." (Doc. 30 at 5) (citing doc. 30-4, Exh. D at 2-3) Mr. Don requests that the Court find his hourly rate of $375.00 and his paralegal's hourly rate of $125.00 are reasonable. (*Id.*)

Defendant contends that the amount Plaintiff's counsel requests for fees and expenses shocks one's conscience, especially when one considers that Plaintiff and counsel have brought twenty of these cases in the last 4 years.  (Doc. 33 at 1)  Describing their numerous ADA lawsuits as a "business," *id*. at 2, Defendant candidly describes Plaintiff, her attorney, and expert Paul Farber as a  litigation "team . . . well versed in the field and most everything they do is done via templates and standard forms . . . [which] utilizes the same expert [who] determines whether violations of the ADA exist." (*Id*. at 1)  In support of its arguments that Plaintiff's requested fees are excessive and unreasonable and their "team's" motivation is more about the business of making money than a genuine desire to gain ADA access for the

disabled,[12] Defendant illustrates several examples challenging the reasonableness of Plaintiff's fees.

1. Contending that on November 30, 2011, when it became clear Defendant had "agreed to remedy all the barriers[]" and only the fees issue would be litigated, Plaintiff's counsel proceeded to "charge[] two hours for working on a motion for summary judgment that was never going to be filed. The two hours should be striken (sic)." (Doc. 33 at 3) "Mr. Don avers that he did not receive a call from undersigned prior to commencing work thereon, which is utterly false as Defendant's fee invoice shows otherwise." (*Id.*) (citing Plaintiff's detailed fee affidavit, doc. 30-2, Exh. B at 5 ("DJD Telephone call w/D. Bonfiglio regarding settlement response rejection.")).

Plaintiff's counsel responds by placing the blame on defense counsel's "unresponsiveness and delay" that Plaintiff's counsel began working on a summary judgment motion on December 1, 2011. (Doc. 36 at 5-6) Confirming they spoke to each other on November 30, 2011, Plaintiff's counsel represents that "[d]efense counsel was informed that he would need to provide a written acceptance of any settlement if Defendant wanted to settle the case. Defense counsel said he would send an email by the end of the day [November 30, 2011] if there was an acceptance. At the end of the day, with no such email from Defense counsel, Plaintiff's counsel then spent two hours on the initial drafting of a Motion for Summary Judgment." (*Id.* at 5) "It was not until the next day, December 1, 2011, that the attorneys spoke again and Defense counsel provided a definitive acceptance[.]" (*Id.*)

2. Defendant's counsel contends that Mr. Don "purportedly spent 5 hours preparing discovery answers that are "mostly boilerplate and redundant." (*Id.* at 3) Responding to Defendant's production requests, "Plaintiff provided the following response to Defendant's

---

[12] As corroboration of this claim, Defendant points out that "[i]n Plaintiff's discovery responses, she states she wanted to visit the Carribean [Fusion] restaurant in Defendant's shopping center, a restaurant that ha[d] been closed for almost two years and over a year before she filed her complaint." (Doc. 33 at 1) (citing Exh. A, the affidavit of Doug Bitner, attached to Defendant's Response).

request for production: all photos were attached to the complaint and any additional photos would be produced in Defendant's expert witness disclosure . . . The balance of the document is strictly boilerplate." (*Id*. at 3-4) In responding to Defendant's twenty non-uniform interrogatories, Plaintiff simply referred the Defendant to the complaint, or were almost identical to each other and contain a standard form objection, and, as an example, "the basic difference between interrogatories 3, 6, 9, 10, 11, 15, 16 and 18 is that 3 and 6 refer to expert witnesses and 9, 10, 11, 15, 16 and 18 refer to non-expert witnesses; the basis for the answer is substantially the same." (*Id*. at 4) "At most, Plaintiff should be awarded 1 hour work on her discovery responses." (*Id*. at 5)

Plaintiff's counsel responds that Defendant misreads his time-sheet entries, denying he spent 5 hours preparing discovery answers. (Doc. 36 at 6) He indicates that on September 16, 2011, Plaintiff's counsel spent 30 minutes speaking to his client about the responses and two hours drafting the responses and, on October 3, 2011, "Plaintiff received and reviewed <u>Defendant's</u> responses to discovery." (*Id*.) (emphasis in original). "Plaintiff had already propounded her discovery responses on September 20, 2011." (*Id*.) (citing doc. 22).

3. Defendant also challenges as unreasonable the 7.5 hours billed to purportedly "prepare a standard form attorney fee application and a reply thereto," but, according to Defendant, "the fee application and all of the exhibits thereto are almost identical to one the Defendant filed just two years earlier in CV08-01668-PHX-SRB, *Georgene Vesecky vs. Bert B. Malouf, L.L.C. and William B. Malouf, L.L.C.*" (Doc. 33 at 5)  Defendant contends that

> [a] comparison of the two fee applications reveals . . . a total of 190 lines of text of which 156 lines are identical, over 82%. *Id*. A comparison of the factual background for both briefs provides that 24 of the 40 lines dedicated thereto are identical, that's 60%. *Id*. . . . Mr. Don's avowal that he spent 4.5 hours preparing a fee application that is virtually identical to one he prepared less than two years ago all the way down to the exhibits attached thereto, shocking. The time it took to regurgitate this template under any circumstances cannot be 4.5 hours, much less at a cost of $375.00 per hour.

(*Id*. at 5) Defendant concludes that preparing a fees' affidavit "[i]s not highly technical stuff, a paralegal at $125.00 per hour could have easily cut and pasted the fee application and in much less time." (*Id*.)

Plaintiff reveals that the 7.5 hours billed to prepare the fees' application "[i]ncludes the three hours anticipated to draft this Reply[,]" claims Defendant's comparison and analysis of a different fees' application are "flawed and groundless," faults Defendant for its failure to "describe[] the amount that it considers would be reasonable for either the Fee Motion or this Reply[,]" and "[f]ails to account that a significant amount of the similarity between fee motions can be attributed to the format required under Local Rule 54.2(c) for fee motions, which mandates very specific content for such documents." (Doc. 36 at 8-9) "While Plaintiff's fee motions certainly has areas of repetition from earlier pleadings, its (sic) is a unique creation that was adapted, rearranged, and created for this case." (*Id*. at 9) Because Plaintiff underestimated the time to draft the Reply, Plaintiff "requests an additional award of seven hours[.]" (*Id*. at 9)

4. Defendant furthers complains that in Plaintiff's fees application, Plaintiff's counsel spent 1.5 hours in June to travel to and tour the Defendant's property and, "[i]n October, less than four months later, Plaintiff again traveled to Defendant's property, expending 2.5 hours viewing the shopping center." (Doc. 33 at 5) "Viewing the site and taking pictures the first time is understandable but to visit it again, is unnecessary." (*Id*.) Defendant claims the 2.5 hours charged by Plaintiff's counsel to visit the Defendant's property the second time is excessive and unreasonable and should be excluded from a fees' award. Defendant charges this is redundant billing, especially when Plaintiff has retained the services of an ADA expert, Mr. Farber.

Plaintiff describes his billing 4.0 hours for site visits as "appropriate" because he "is responsible for bringing meritorious claims, and identifying the proposed solutions to barrier removal proposed by Plaintiff's ADA expert." (Doc. 36 at 6) Mr. Don indicates the "[f]irst site visit was to verify the existence of meritorious claims. The second site visit was to accompany the expert to review the barrier identification and discuss proposed barrier removal solutions." (*Id*.)

5. Finally, Defendant objects to an award to Plaintiff for $1,000.00 "[i]n post expert witness fees for future site inspections. What for, the work is completed and pursuant to the

settlement agreement Defendant is not required to take any further action[?]" (Doc. 33 at 6) "The remedial work was required to be completed prior to the end of the year, Plaintiff did nothing to determine whether it was completed prior to filing her fee application." (*Id*.) Because the remedial work was required to be completed prior to the end of the year, a $1,000.00 expert fee for future site inspection is excessive and unreasonable.

Plaintiff claims that because Defendant has failed to schedule a final site inspection to verify the work has been completed, which is required by the settlement agreement, "none of Defendant's claims of remediation are confirmed[,] [t]he final expert site inspection is necessary to verify Defendant's claims of compliance and . . . Plaintiff deserves to be compensated for its cost." (Doc. 36 at 7-8)

## II. Attorney's Fees in ADA Cases

### A. Generally

The American "[l]egal system generally requires each party to bear [her] own litigation expenses, including attorney's fees, regardless whether [s]he wins or loses." *Fox v. Vice*, ___ U.S. ___, 131 S.Ct. 2205, 2213 (2011) (holding a court may grant reasonable fees to the defendant under § 1988, but only for costs that the defendant would not have incurred but for the frivolous claims, abrogating *Balmer v. HCA, Inc*., 423 F.3d 606). Nevertheless, in section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs. 42 U.S.C. § 12205 ("In any action . . . , the court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." ). In fact, "[t]he court *should* award attorneys' fees and costs to a prevailing plaintiff under the ADA, 42 U.S.C. § 12205, unless special circumstances render the award unjust." *Hohlbein v. Utah Land Resources LLC*, 2012 WL 313613, * 1 (9th Cir. February 2, 2012) ("*Hohlbein II*") (emphasis added); *Martinez v. Thrifty Payless, Inc*., 2006 WL 279309, * 1 (E.D.Cal. February 6, 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1976)). "In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel . . . and avoiding a

windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Hohlbein II*, 2012 WL 313613 at * 1. "The district court has 'considerable discretion' in determining the reasonableness of attorneys' fees." *Jansen v. Experian Information Solutions, Inc*., 2011 WL 846876, * 2 (D.Or. March 9, 2011) (citing *Webb v. Ada County, Idaho*, 195 F.3d 524, 527 (9th Cir. 1999)). An award of attorney's fees under the ADA is reviewed for abuse of discretion. *Jankey v. Poop Deck*, 537 F.3d 1122, 1129 (9th Cir. 2008).

**B. A Three Step Process**

A district "court decides whether to grant fees in three steps. First, the plaintiff must be the prevailing party." *Hohlbein II,* 2012 WL 313613 at * 1. (citing *Fischer v. SJB–P.D. Inc*., 214 F.3d 1115, 1119 (9th Cir. 2000)). "If so, the court calculates the 'lodestar figure' by multiplying a reasonable rate by the number of hours reasonably expended." *Id*. "Finally, a court consults the [relevant] '*Kerr* factors'" *Id*. (citing *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)); *see also Jordan v. Multnomah County*, 815 F.2d 1258, 1264 n. 11 (9th Cir. 1987) (noting that the Ninth Circuit no longer requires that the district court address every factor listed in *Kerr* ). Although the lodestar fee is presumed to be reasonable, a district court may adjust it upward or downward as necessary to determine a reasonable fee. *99 Only Stores v. Variety 99 Cents Plus*, 2011 WL 3319571, * 2 (E.D.Cal. July 29, 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *see also Doran v. Corte Madera Inn Best Western*, 360 F.Supp.2d 1057, 1061 (N.D.Cal. 2005) (citing *Jordan*, 815 F.2d at 1262).

**1. Prevailing Party**

A plaintiff who enters a legally enforceable settlement agreement is considered a prevailing party. *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002).

**2. Lodestar Calculation**

When deciding whether to adjust the lodestar, district courts consider the relevant twelve *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the

customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 69-70. "A strong presumption exists that the lodestar figure represents a reasonable fee, and therefore, it should only be enhanced or reduced in rare and exceptional cases." *Fischer*, 214 F.3d at 1119 n. 4 (internal quotation marks omitted). "[I]f the court believes the overall award is too high, it needs to say so and explain why, rather than making summary cuts in various components of the award. While we accord deference to the district court's explanation of why a requested fee is excessive, we can only do so if the district court provides an explanation that we can meaningfully review." *Hohlbein v. Utah Land Resources LLC*, 432 Fed.Appx. 655, 656-57 (9th Cir. 2011) ("*Hohlbein I*") (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008)). "[A]ny reduction in requested attorneys' fees should be supported by a statement of reasons for the reduction." *Id.* at 657.

### 3. Reasonableness of the Attorney's Fees

The party seeking an award of fees bears the burden to produce evidence to support the number of hours worked and the rates claimed. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). "The court determines the reasonable hourly rate 'according to the prevailing market rates in the relevant community,' which is typically the one in which the district court sits." *Wilson v. Haria and Gogri Corp.*, 2007 WL 1795737, * 3 (E.D.Cal. June 20, 2007) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Perdue v. Kenny A*, ___ U.S. ___, 130 S.Ct. 1662, 1672 (2010). "The party moving for attorneys' fees 'has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Id.* (quoting *Jordan*, 815 F.2d at 1263). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d

1    at 980 (citation and internal quotation marks omitted).

2         A contingency fee agreement between a prevailing plaintiff and her attorney in an

3    ADA case does not preclude, reduce, or enhance an award of reasonable fees and costs

4    pursuant § 12205 "[b]ecause the contingency arrangement does not govern what the court

5    requires the losing party to pay the prevailing party." *Yahoo!, Inc. v. Net Games, Inc*., 329

6    F.Supp.2d 1179, 1182-86 (N.D.Cal. 2004) (citing *Venegas v. Mitchell*, 495 U.S. 82, 90

7    (1990) (a reasonable attorney fee award "controls what the losing defendant must pay, not

8    what the prevailing party must pay his lawyer.")); *Blanchard v. Bergeron*, 489 U.S. 87, 96

9    (1989) (concluding that the "trial judge should not be limited by the contractual fee

10   agreement between plaintiff and counsel"). "Limiting the award to the fee charged by

11   reasonably competent counsel fulfills the aim of fee-shifting provisions, which is to allow

12   parties to employ reasonably competent counsel without cost to themselves if they prevail."

13   *Id.* at 1183 (citation and internal quotation marks omitted). By the same token, the lodestar

14   figure should not be enhanced to reflect the fact that the party's attorney was retained on a

15   contingent fee basis and thus assumed the risk of receiving no payment at all because such

16   a fee arrangement is "irrelevant" and doing so "would create unintended problems, including

17   "indiscriminately encouraging nonmeritorious cases[.]" *Id.* at 886-87 (quoting *City of

18   Burlington v. Dague*, 505 U.S. 557, 563 (1992)).

19        "The fee applicant should exercise billing judgment with respect to the number of

20   hours worked and billed." *Praseuth v. Rubbermaid, Inc*., 406 F.3d 1245, 1257 (10th Cir.

21   2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983),[13] *abrogated on other grounds*,

22   *Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002)). "Billing judgment consists of

23   winnowing hours actually expended down to hours reasonably expended." *Id.* (citing *Case

24   v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1250 (10th Cir. 1998)).

25   "Hours that are not properly billed to one's *client* also are not properly billed to one's

26   _____

27        [13] "[T]he standards set forth in this opinion are generally applicable in all cases in
     which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S.

28   at 433 n. 7.

*adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original; citation omitted). In evaluating what is a reasonable number of hours, a district court must review detailed time records to determine whether the hours claimed by the applicant were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). When determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McKown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

**III. Litigation Expenses and Costs**

A successful plaintiff in an ADA case may recover her litigation expenses and costs pursuant to 42 U.S.C. § 12205. "The ADA authorizes a court to award attorneys' fees, litigation expenses, and costs to a prevailing party." *Hohlbein I*, 432 Fed.Appx. at 657. "[T]he statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA." *Id.* (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (Citing 42 U.S.C. § 12205 and 28 C.F.R. § 35.175 and "[b]ecause the term "litigation expenses" normally encompasses expert witness fees, we hold that the statutory provision provides direct authority for the award of expert witness fees."). In *Hohlbein I*, "the expert witness inspection served as the foundation for the specific alterations that Defendants were ordered to make. Nonetheless, expert witness fees were denied without explanation." 432 Fed.Appx. at 657. The Ninth Circuit found the denial of expert witness fees without explanation was "an abuse of discretion." *Id.* Like attorney's fees, expert witness fees must be reasonable to be awarded to a prevailing ADA plaintiff. *Disabled Patriots of America, Inc. v. Taylor Inn Enterprises, Inc*., 424 F.Supp.2d 962, 969 (E.D.Mich. 2006) (expert witness' hours and two inspections deemed excessive and reduced by the district court).

**IV. Discussion**

It is undisputed that Plaintiff is the prevailing party, having achieved a legally

1   enforceable settlement agreement that has already resulted in substantial ADA modifications
2   to the shopping center eliminating barriers to access. This is sufficient to establish Plaintiff
3   as the prevailing party under federal law. *Barrios*, 277 F.3d at 1134-35; *Richard S. v. Dep't.*
4   *of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir. 2003). Moreover, there are no special
5   circumstances present in this case to render unjust a fee's award to Plaintiff. *Hohlbein II*,
6   2012 WL 313613 at * 1.

7       Defendant does not contest all the time Plaintiff's attorney spent negotiating and
8   litigating this case is not compensable, only that which is unreasonable. *Commissioner, INS*
9   *v. Jean*, 496 U.S. 154 (1990) (EAJA); *Thompson v. Gomez*, 45 F.3d 1365 1367-68 (9th Cir.
10  1995) (applying *Jean* to a § 1988 fees claim). In civil rights cases, fees incurred on the
11  collection of fees is proper under section 1988. *Spain v. Mountanos*, 690 F.2d 742, 747 (9th
12  Cir. 1982); *see also Kosloff v. Washington Square Associates, LLC*, 2007 WL 2023497 * 4
13  (N.D.Cal July 12, 2007) (awarding fees for preparing motion for attorney's fees in ADA
14  case).

15      The Court finds that Mr. Don's hourly rate of $375.00 is reasonable,[14] considering his
16  significant experience not only as a practicing civil rights attorney but also as an ADA
17  specialist litigating over 100 Title II and III cases involving architectural barrier removal, an
18  area of law the Ninth Circuit has described as "highly technical."[15] Plaintiff has demonstrated
19  through the affidavits from two independent attorneys practicing civil rights law in Phoenix
20  and a 2011 District Court of Arizona decision that Mr. Don's hourly rate of $375.00 is within
21

22      [14] Defendant does not challenge the paralegal's hourly rate of $125.00 as
23  unreasonable. Thus, the Court concludes, without further discussion, the paralegal's hourly
24  rate is reasonable.

25      [15] "The issues involved [in ADA accessibility cases] are, to be frank, mind-numbingly
26  boring; the ADA Accessibility Guidelines regulate design elements down to the minutest
    detail . . . [But, a]lthough the ADA's requirements are *highly technical*, they are essential to
27  serve a core function of all civil rights laws: ensuring that the arenas of civic life are open
    to everyone." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732, n. 5 (9th Cir. 2007) (emphasis
28  added; citation omitted).

the prevailing market rates in Phoenix, Arizona for a private practice lawyer representing a plaintiff in an ADA lawsuit. *Blum*, 465 U.S. at 895; *ASARCO,* 2011 WL 6951842 at 6.

While Mr. Don indicates he "has exercised 'billing judgment' in the production of the submitted time sheets [and] reduced or omitted time that he deemed excessive[,]" doc. 30 at 5, the Court finds that a substantial amount of the time Plaintiff's counsel spent on various aspects of the case is excessive and unreasonable, especially in light of counsel's extensive experience in ADA cases, the straightforward nature of the case, the lack of any unique or complex legal or factual issues in the case, and the nature of the task could have been performed in the main by a paralegal at one-third the cost. Specifically, for example, the Court finds the following fees excessive and unreasonable:

1. The time (2 hours) spent drafting Plaintiff's summary judgment motion was unreasonable. It was unreasonable to bill the time to begin work on a summary judgment motion on December 1, 2011 when the scheduling order's dispositive motion deadline was nearly six months away, *i.e.*, May 31, 2012, after defense counsel made it reasonably clear by his November 30, 2011 email that Defendant intended to "remove[] any architectural barrier that exists at the shopping center[]" and "[t]he architectural barrier work is going to be completed regardless of [Plaintiff's] acceptance of the foregoing offer and will commence shortly." (Doc. 33-3, Exh. C at 6)  While setting an arbitrary settlement deadline may be an effective negotiation tool, attorney's fees incurred after such a deadline are not necessarily reasonable.

2. The time (14.5 hours) billed by Plaintiff's counsel to prepare a standard, straight-forward attorney fee's application and a reply (7.5 hours, including 3 for the anticipated reply + 7 hours) was unreasonable, considering the experience Plaintiff's counsel has in ADA and other civil rights cases. The bulk of this work should have been initially performed by a paralegal at a much lower hourly rate with counsel spending a modest amount of time finalizing and approving the documents before filing. Once Plaintiff's counsel realized that only the attorney's fees issue would be litigated and decided by the Court, good billing judgment dictated "[w]innowing hours actually expended down to hours reasonably

expended." *Case*, 157 F.3d at 1250. It is highly unlikely Mr. Don would have properly charged Ms. Vesecky as much time on the fees' issue as he did Defendant. *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphasis in original).

3. Plaintiff's counsel billed entirely too much time (4 hours) at the site, especially when he had retained an ADA expert who was knowledgeable of the ADA Guidelines and would prepare a detailed report with photographs. While it is critical for a lawyer (and a judge) to view an ADA site to understand the property's layout and various nuances, Mr. Don's superior understanding of the ADA and its Guidelines coupled with the assistance of Mr. Farber, billing more than two hours, including travel, to view this relatively small shopping center was unreasonable.

4. While Mr. Farber's expert fees at $250.00 per hour for total fees of $3,200.00 before a final site inspection seem high, his $1,000.00 (4 hours) fee for a future post-modification site inspection is excessive and unreasonable. With his technical knowledge and experience of the ADA and possession of the necessary tools to readily determine whether wheelchair ramps meet or exceed ADA requirements, more than one hour, including travel, much less four hours, to confirm whether the five post-settlement changes complied with the ADA and the settlement agreement are unreasonable. Moreover, it is unreasonable to not include a post-modification viewing of the site within his $3,200.00 previous billing, which should not take him more than one hour.

While Plaintiff's counsel is deserving of reasonable fees, he is not entitled to a windfall at the Defendant's expense. After scrutinizing Mr. Don's billing statement, doc. 30-2, and considering the relevant twelve *Kerr* factors, the Court finds it appropriate to adjust Plaintiff's fees and litigation expenses downward by 16 hours and $1,000.00 to achieve reasonable fees and expenses in this case. Plaintiff should be awarded *reasonable* attorney's

and paralegal fees in the amount of $9,103.75,[16] litigation expenses (expert witness fees, postage, filing and service fees[17]) in the amount of $3,683.06 for a total fees and expenses award of $12,786.81.  *See Fox v. Cohen Ventures, LLC*, 2009 WL 1393348, * 4 (S.D.Fla. May 15, 2009 ) (Plaintiff's counsels' time reduced in light of the volume of ADA cases litigated by Plaintiff's counsel on behalf of this plaintiff under very similar circumstances); *Iverson v. Braintree Property Assoc.*, 2008 WL 552652, * 3 (D.Mass. Feb.26, 2008) (court reduced attorneys' fees request by 40% stating, "[j]ust as I credit [counsel's] substantial experience in litigating ADA cases in determining their hourly fee, I also consider that experience here: their obvious familiarity with similar cases suggests that they would 'be able to prosecute this fairly routine ADA case with a considerably lower expenditure of time than would a rookie'")  (citation omitted).

Dated this 5th day of March, 2012.

Lawrence O. Anderson
United States Magistrate Judge

---

[16] This amount is calculated as follows: 39.48 total attorney's hours requested for compensation less 16 hours results in compensable time of 23.48 hours times $375.00 equals $8,805.00 plus paralegal fees of $298.75 equals total fees of $9,103.75.

[17] Permissible litigation expenses under the ADA may include court filing and service of process fees and photocopying expenses. *Walsh v. Boston University*, 661 F.Supp.2d 91, 117 (D.Mass. 2009) (citations omitted).